# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CURTIS A. JORDAN,
    Petitioner,

    vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:17-cv-054

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's return of writ and petitioner's reply. (Doc. 11, 17).[1]

## I. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On August 15, 2013, the Scioto County, Ohio, grand jury returned a one-count indictment charging petitioner with burglary. (Doc. 11, Ex. 1). Petitioner, through counsel, entered a plea of not guilty. On October 7, 2013, the grand jury issued a superseding indictment, charging petitioner with a single count of burglary with a repeat violent offender specification. (Doc. 11, Ex. 3).

On October 31, 2013, petitioner, through counsel, withdrew his original not-guilty plea and entered a plea of guilty to burglary with a repeat violent offender specification. (Doc. 11, Ex. 4). The trial court accepted his plea and found petitioner guilty as charged in the indictment. On November 7, 2013, petitioner was sentenced to a total aggregate prison sentence of fourteen years in the Ohio Department of Corrections. (Doc. 11, Ex. 5). Petitioner received an eight year sentence on his burglary conviction and six years on the repeat violent offender specification.

---

[1] Petitioner has also filed a motion to expand the record, which has been granted in part by separate Order issued this date. (*See* Doc. 14).

(*Id.*).

Petitioner filed a pro se notice of appeal to the Ohio Court of Appeals. (Doc. 11, Ex. 6).

Petitioner, through different counsel, subsequently raised the following assignment of error in his

appellate brief:

> The trial court erred when it sentenced Curtis A. Jordan to six years of
> incarceration as a repeat violent offender without first making the findings
> required by R.C. § 2929.14(B)(2)(a). (P.H. at 7-10; S.H. at 2-7, 13-4, 18-21).
>
> Issue Presented for Review: Did the trial court err in sentencing Mr. Jordan to six
> years as a repeat violent offender without making the required findings?

(Doc. 11, Ex. 7). On December 3, 2015, the Ohio appeals court affirmed the judgment of the

trial court. (Doc. 11, Ex. 10). Petitioner filed a pro se motion for reconsideration (Doc. 11, Ex.

11), which was overruled by the court on February 3, 2016. (Doc. 11, Ex. 14).

## Ohio Supreme Court

Petitioner filed a pro se appeal to the Ohio Supreme Court. (Doc. 11, Ex. 15). In his

memorandum in support of jurisdiction, petitioner raised the following single proposition of law:

> Proposition of Law: The trial court erred when it sentenced the appellant to six
> years of incarceration as a repeat violent offender without first making the
> findings required by R.C. § 2929.14(B)(2)(a).
>
> Issue Presented for Review: Did the trial court err in sentencing the appellant to
> six years as a repeat violent offender without making the required findings?

(Doc. 11, Ex. 16 at PageID 176). On June 29, 2016, the Ohio Supreme Court declined to accept

jurisdiction of the appeal. (Doc. 11, Ex. 18).

## Motion to Certify a Conflict

Meanwhile, on February 16, 2016, petitioner filed a pro se motion to the Ohio Court of

Appeals to certify a conflict. (Doc. 11, Ex. 19). Petitioner's motion was denied by the Ohio

appeals court on April 20, 2016.  (Doc. 11, Ex. 22).

## Application to Reopen Appeal

Petitioner also filed an application to reopen his appeal pursuant to Ohio R. App. P. 26(B)

on February 24, 2016.  (Doc. 11, Ex. 23).  Petitioner argued that his appellate counsel was

ineffective for failing to raise the following two assignments of error:

> A. <u>The Appellant's First Assignment of Error</u>:  Ineffective assistance of appellate counsel.
>
> <u>Issues present[ed] for review</u>:
> (1) Whether Mr. Goldmeier is ineffective because he failed to raise the issue of ineffective assistance of trial counsel in the appellant's direct appeal?
> (2) Whether Mr. Goldmeier is ineffective because he failed to raise the issue of prosecutorial misconduct in the appellant's direct appeal?
>
> B. <u>The Appellant's Second Assignment of Error</u>:  Ineffective assistance of appellate counsel.
>
> <u>Issues present[ed] for review</u>:
> (1) Whether Mr. Goldmeier is ineffective because he failed to raise the issue of the sufficiency of the evidence in the appellant's direct appeal?
> (2) Whether Mr. Goldmeier is ineffective because he failed to raise the issue that the trial court abused its discretion in the appellant's direct appeal regarding multiple issues?
> (3) Whether Mr. Goldmeier is ineffective because he failed to raise the issue that the appellant's sentence is contrary to law?

(*Id.*).  On April 27, 2016, the Ohio Court of Appeals denied petitioner's application to reopen.

(Doc. 11, Ex. 25).

On April 27, 2016, petitioner filed a pro se appeal from the Ohio Court of Appeals'

denial of his application to reopen to the Ohio Supreme Court.  (Doc. 11, Ex. 26).  Petitioner

raised the same assignments of error presented in his Rule 26(B) application as propositions of

law.  (*See* Doc. 11, Ex. 27 at PageID 244, 246).  On July 27, 2016, the Ohio Supreme Court

declined to accept jurisdiction over the appeal. (Doc. 11, Ex. 29).

## Federal Habeas Corpus

On January 20, 2017, petitioner commenced the instant federal habeas corpus action.

(*See* Doc. 1). Petitioner raises the following four grounds for relief in the petition:

GROUND ONE: THE TRIAL COURT ERRED WHEN IT SENTENCED THE PETITIONER TO SIX YEARS OF INCARCERATION AS A REPEAT VIOLENT OFFENDER WITHOUT FIRST MAKING THE FINDINGS REQUIRED BY R.C. § 2929.14(B)(2)(a).

ISSUE PRESENT[ED] FOR REVIEW:
(1). DID THE TRIAL COURT ERR IN SENTENCING THE PETITIONER TO SIX YEARS AS A REPEAT VIOLENT OFFENDER WITHOUT MAKING THE REQUIRED FINDINGS?

GROUND TWO: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

ISSUES PRESENT[ED] FOR REVIEW:
(1). WHETHER APPELLATE COUNSEL IS INEFFECTIVE BECAUSE HE FAILED TO RAISE THE ISSUE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN THE PETITIONER'S DIRECT APPEAL?

(2). WHETHER APPELLATE COUNSEL IS INEFFECTIVE BECAUSE HE FAILED TO RAISE THE ISSUE OF PROSECUTORIAL MISCONDUCT IN THE PETITIONER'S DIRECT APPEAL?

GROUND THREE: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

ISSUES PRESENT[ED] FOR REVIEW:
(1). WHETHER APPELLATE COUNSEL IS INEFFECTIVE BECAUSE HE FAILED TO RAISE THE ISSUE OF THE SUFFICIENCY OF THE EVIDENCE IN THE PETITIONER'S DIRECT APPEAL?

(2). WHETHER APPELLATE COUNSEL IS INEFFECTIVE BECAUSE HE FAILED TO RAISE THE ISSUE THAT THE TRIAL COURT ABUSED ITS DISCRETION IN THE PETITIONER'S DIRECT APPEAL REGARDING MULTIPLE ISSUES?

(3). WHETHER APPELLATE COUNSEL IS INEFFECTIVE BECAUSE HE

FAILED TO RAISE THE ISSUE THAT THE PETITIONER'S SENTENCE IS CONTRARY TO LAW?

GROUND FOUR: THE PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS WERE VIOLATED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ABANDONED ITS DUTY TO MAKE THE REQUIRED FINDINGS THAT IT MUST MAKE WHEN IT SENTENCED THE PETITIONER WITH REGARDS TO R.C. § 2929.14(B)(2)(A).

ISSUES PRESENT[ED] FOR REVIEW:
(1). WHETHER THE PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS WERE VIOLATED BECAUSE THE TRIAL COURT FAILED TO APPLY THE STATE'S SENTENCING STATUTE REQUIREMENTS DURING THE TIME THAT IT WAS SENTENCING THE PETITIONER?

(2). DOES THE PETITIONER'S GUILTY PLEA AND THE DOCTRINE OF INVITED ERROR ALLOW THE PETITIONER'S TRIAL COURT TO ABANDON MAKING THE FINDINGS THAT ARE REQUIRED BY THE STATE LEGISLATOR'S (sic) AND FOLLOWED BY THE ENTIRE STATE?

(Doc. 1 at PageID 26–27). As noted above, respondent has filed a return of writ in opposition to the petition, to which petitioner has filed a reply. (Doc. 11, 17).

## II. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

5

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but

does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 39–40 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We

said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

## A. Grounds One and Four

In Ground One of the petition, petitioner claims that the Ohio trial court erred in sentencing him as a repeat violent offender without making required statutory findings pursuant to Ohio Rev. Code § 2929.14(B)(2)(a)). In Ground Four, petitioner claims that the trial court's failure to make the statutory findings deprived him of his due process and equal protection rights. (*See* Doc. 1 at PageID 26–27). Petitioner raised the sentencing claim asserted in Ground One on direct appeal to the Ohio Court of Appeals, which upheld the judgment of the trial court as follows:

> Appellant argues that the trial court erred by not making all of the statutory findings necessary to impose a six year sentence as a repeat violent offender. R.C. 2929.14(B)(2)(a) states in pertinent part:

"If division (B)(2)(b) does not apply, the court may impose on an offender, in addition to the longest prison term authorized or required for the offense, an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is aggravated murder and the court does not impose a sentence of death or life imprisonment without parole, murder, terrorism and the court does not impose a sentence of life imprisonment without parole, any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."

On October 31, 2013, appellant filed a "waiver" wherein he pled guilty to "burglary with repeat violent offender specification." A guilty plea is generally a complete admission of guilt. Crim.R. 11(B)(1). Thus, appellant has admitted to the repeat violent offender specification and any failure of the trial court to make findings is, at most, harmless error. See Crim.R. 52(A). Also, R.C.

2929.14(B)(2)(a)(i) expressly allows the imposition of additional time when a defendant pleads guilty to a repeat violent offender specification.

Second, the transcript of the October 31, 2013 change of plea hearing reveals that defense counsel stated "[y]our Honor, the Court has noted our prior objection to the - but inasmuch as he has pled to the <u>repeat violent offender specification,</u> I don't know that we note – that we have any objection any longer to that." (Emphasis added). Thus, appellant withdrew any objection he had to the "repeat violent offender" specification included as part of the indictment. Furthermore, he lodged no objection when the trial court sentenced him on that specification.

Moreover, it is well-settled that an appellant cannot take advantage of an error that he, himself, induced the trial court to make. See *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92 at ¶35 (4th Dist.); *State v. Hardie*, 4th Dis. Washington No. 14CA24, 2015-Ohio1611 at ¶11. Although we readily conclude that any failure by the trial court to make the required statutory findings with regard to this specification constitutes harmless error, we also conclude that appellant's comment to the court at the change of plea hearing invoked the invited error doctrine.

Accordingly, for all these reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

(Doc. 11, Ex. 10).

As an initial matter, to the extent that petitioner claims that he is entitled to federal habeas relief because the Ohio courts erred in interpreting and applying Ohio's repeat violent offender statute, his claim raises an issue of state-law only which is not cognizable in this federal habeas proceeding. "[I]t is not the province of a federal court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Bennett v. Warden*, 782, F. Supp.2d 466, 478 (S.D. Ohio 2011) ("[B]ecause the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.").

A federal court may review a state prisoner's habeas petition only on the ground that the

challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner's claim that his sentence violated state law therefore fails to state a cognizable claim for federal habeas relief. *See Bostick v. Cook*, No. 5:14-cv-2539, 2016 WL 3456445, at *6 (N.D. Ohio Mar. 25, 2016) (finding that a claim challenging a repeat violent offender sentence was not cognizable in federal habeas corpus) (Report and Recommendation), *adopted*, 2016 WL 6124435 (N.D. Ohio Oct. 20, 2016); *Wright v. Bobby*, No. 1:05-cv-2870, 2008 WL 2484170, at *20–21 (N.D. Ohio June 17, 2008) (finding a petitioner's claim that the trial court failed to make factual findings under § 2929.14(B) was not a cognizable claim in a federal habeas corpus action).

In Ground Four, petitioner claims that the trial court's failure to make the required factual findings under § 2929.14 resulted in violations of his equal protection and due process rights. (*See* Doc. 1 at PageID 37). However, petitioner's claim is based solely on an alleged violation of Ohio's repeat violent offender statute,[2] which as discussed above, falls outside this Court's authority to consider. *See Bennett v. Turner*, No. 1:12-cv-489, 2013 WL 557013, at *3 (N.D. Ohio Jan. 23, 2013) (Report and Recommendation) (rejecting the habeas petitioner's attempt to cast his claim of sentencing error under Ohio law "in constitutional terms by stating his 'sentence was not given according to due process and equal protection'"), *adopted*, 2013 WL 518704 (N.D. Ohio Feb. 12, 2013). *See also Robbins v. Warden*, No. 1:15-cv-181, 2016 WL 1039568, at *9 (S.D. Ohio Mar. 7, 2016) (Report and Recommendation), *adopted*, 2016 WL 1572963 (S.D.

---

[2] Petitioner argues that "[b]ecause the above sentencing requirements must be followed by every [trial court] in the State of Ohio, yet, when the Petitioner was sentenced the [trial court] disregarded the above sentencing requirements, the Petitioner's due process rights and his equal protection rights have been violated on a State and Federal level." (Doc. 1 at PageID 47).

11

Ohio Apr. 19, 2016).

In any event, petitioner has procedurally defaulted any cognizable constitutional claim by failing to raise such claims on direct appeal. Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin,* 811 F.2d at 326).

In this case, petitioner failed to present his due process and equal protection claims raised in Ground Four on direct appeal. Instead, petitioner argued that the trial court erred under state law in failing to make factual findings as required under § 2929.14(B)(2)(a). (*See* Doc. 11, Ex. 7). Petitioner did not rely on federal or state cases employing constitutional analysis,[3] nor can the Court conclude that petitioner phrased his claim in terms of constitutional law or alleged facts well within the mainstream of constitutional law.

In his subsequent appeal to the Ohio Supreme Court, petitioner did argue that his constitutional rights were violated by the trial court in his explanation as to why his case is a case of public or great general interest and involves a substantial constitutional question. (*See* Doc. 11, Ex. 16 at PageID 174). However, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider the constitutional issues, which had not been raised to or considered by the intermediate

---

[3] As he does in the instant petition, on direct appeal petitioner relied on *Ohio v. Warren*, No. 97937, 2012 WL 4848996, at*1 (Ohio Ct. App. Oct. 11, 2012) and *State vs. Bonnell*, 16 N.E. 3d 659 (Ohio 2014), in arguing that the trial court failed to comply with § 2929.14. (*See* Doc. 11, Ex. 7 at PageID 112). Although in both cases the Ohio courts found error under § 2929.14 for failure to make statutory findings, in neither case did the Ohio courts rely on or base their decision on principles of constitutional law. Petitioner's singular citation to *Oregon v. Ice*, 555 U.S. 160 (2009), for the proposition that "the United States Supreme Court declared such fact-finding requirements constitutional," is also insufficient to have fairly presented petitioner's due process and equal protection claims to the Ohio courts. (*Id.* at PageID 112).

The undersigned further notes that to the extent that petitioner seeks to challenge the imposition of consecutive sentences under *Oregon vs. Ice*, his claim is without merit. In that case, the Supreme Court explicitly held that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment. Indeed, the Supreme Court emphasized that the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested "exclusively" with the sentencing judge and, moreover, that "the prevailing practice" of judges has been the "imposition of consecutive, rather than concurrent, sentences." *Ice*, 555 U.S. at 168-69. Although the *Ice* Court recognized that legislatures in states like Ohio and Oregon subsequently enacted "statutory protections meant to temper the harshness of the historical practice" favoring consecutive sentences, the Court also made it clear that the state-created protections do not trigger constitutional concerns, but rather fall within the "authority of States over the administration of their criminal justice systems," which "lies at the core of their sovereign status." *Id.* at 169-70.

appellate court. *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965);

*see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08-cv-716, 2010 WL 3910236, at *9 (S.D.

Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d

1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.);

*Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08-cv-433, 2009 WL 3378246, at *1, *9 n.8

(S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[4]

Because petitioner failed to provide the state's highest court with an opportunity to

correct the alleged violations of his constitutional rights, he procedurally defaulted and has

waived the due process sand equal protection claims raised in Ground Four absent a showing of

cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice

will occur if the claim is not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489

U.S. at 262. No such showing has been made in this case.[5] Therefore, petitioner's claims in

Ground Four are waived and barred from review in this federal habeas proceeding.

---

[4] *Cf. Mayes v. Hudson,* No. 1:07-cv-315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (in holding that the petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted: "Even if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

[5] Petitioner cannot rely on the ineffective assistance of appellate counsel as cause for his failure to raise his constitutional claims on direct appeal because he failed to raise the claims as assignments of error in his application to reopen his appeal. Ineffective assistance of counsel may constitute cause for a procedural default, so long as the ineffective assistance of counsel claim has been presented to the state courts, and is not itself procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) (citing *Murray,* 477 U.S. at 488–89). In his application to reopen his direct appeal, petitioner failed to contend that his appellate counsel was ineffective for failing to raise a due process or equal protection claim as an assignment of error on direct appeal. (*See* Doc. 11, Ex. 23). Accordingly, the ineffective assistance of appellate counsel may not serve as cause for the procedural default of petitioner's claims.

Accordingly, in sum, because petitioner's First and Fourth Grounds for relief either raise non-cognizable issues of state law or are procedurally defaulted and waived, petitioner is not entitled to habeas corpus relief on these grounds.

## B. Grounds Two and Three

In Grounds Two and Three of the petition, petitioner contends that his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness and for failing to raise claims regarding prosecutorial misconduct, the sufficiency of the evidence, abuse of discretion on the part of the trial court "on multiple issues,"[6] and that his sentence is contrary to law. (*See* Doc. 1 at PageID 26–27). With respect to the underlying ineffectiveness of trial counsel claims, petitioner claims that his trial counsel misinformed him regarding the repeat violent offender specification, failed to challenge the specification being added to his indictment or the degree of felony with which petitioner was charged, and persuaded him to plead guilty. (*Id.* at PageID 38–39). Specifically, petitioner claims that trial counsel "coerced the Petitioner into pleading guilty to the burglary charge with the [repeat violent offender specification] by telling the Petitioner that if he plead guilty to the above charge and allowed her to withdraw his objection to the [specification], that the trial court would only sentence him for the Burglary charge itself and that he would not receive any time for the [specification]." (Doc. 17 at PageID 438).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to petitioner's ineffective assistance of counsel claim is *Strickland v. Washington,* 466

---

[6] Petitioner claims that the trial court abused its discretion by failing to permit his trial counsel to withdraw from his case, by accepting petitioner's guilty plea despite petitioner's allegation that the prosecution failed to present sufficient evidence to convict him of a second degree felony burglary charge or a repeat violent offender specification, because the trial court's "personal feelings and emotions were involved" at the time of his sentencing, and because his speedy trial rights were violated. (Doc. 1 at PageID 41).

U.S. 668 (1984). To establish his ineffective assistance of appellate counsel claim, petitioner must demonstrate: (1) his attorney on direct appeal made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense by undermining the reliability of the appeal result. *Id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

In the appellate context, it is well-settled that counsel is not ineffective under the first

prong of the *Strickland* test for failing to raise every non-frivolous argument. *Carter v. Wolfenbarger*, 347 F. App'x 205, 211 (6th Cir. 2009) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Friday v. Pitcher*, 99 F. App'x 568, 575 (6th Cir. 2004) (quoting *Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001)) ("appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points"). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001). Although it is possible to satisfy the first prong of the *Strickland* test based on a claim challenging counsel's failure to raise a particular issue on direct appeal, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley*, 108 F. App'x 375, 379 (6th Cir. 2004). "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised," the Court then must consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Carter*, 347 F. App'x at 211. The inquiry involves an assessment of whether the underlying ineffective assistance of trial counsel claim "had a reasonable probability of success." *Valentine*, 488 F.3d at 338; *see also Carter*, 347 F. App'x at 211 ("In short, as goes [the petitioner's] trial IAC claim, so goes his appellate IAC claim.").

The Court need not examine the question of whether counsel's performance was deficient

before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

In this case, petitioner raised his ineffective assistance of appellate counsel claims in his application to reopen his appeal, which was denied by the appellate court, reasoning in pertinent part as follows:

> Appellant's primary argument, to the extent we understand it, appears to be that appellate counsel was ineffective for having not raised issues regarding trial counsel's alleged ineffectiveness. Appellant thereafter makes various "shotgun" arguments as to why trial counsel was ineffective. However, the flaw in these arguments is that appellant pled guilty to the offense. As we noted in *Jordan I*, supra at ¶4, a guilty plea is a complete admission of guilt. Thus, it is irrelevant whether, as appellant claims, insufficient evidence existed to convict him, that he was the victim of prosecutorial misconduct, that the trial court abused its discretion or that his speedy trial time had expired. The fact of the matter is that appellant pled guilty and no trial occurred.
>
> To the extent that we understand one of his arguments to be that trial counsel somehow coerced him into pleading guilty, appellate counsel can hardly be faulted for raising an issue of which he was not aware. Appellant appears to claim, in an accompanying affidavit, that he informed appellate counsel of this issue during a prison visit. However, courts may disregard self-serving declarations by movants, petitioners and applicants in various post-appeal attacks on a conviction. See generally *State v. Kinder*, 8th Dist. No. 94722, 2012-Ohio-1339, at ¶4 (on an App. R. 26(B) application); also see *State v. Hoffner*, 6th Dist. Lucas No. L-01-1281, 2002-Ohio-5201, at ¶25 (during proceedings for postconviction relief).
>
> Finally, we point out that the trial court engaged in an extensive colloquy with appellant before it accepted his plea. If appellant had been tricked or coerced into pleading guilty, the plea hearing would have been the time to advise the trial court. Appellant could have refused to enter the plea, but he did not. Appellant cannot now complain about an alleged scenario involving trial counsel that he could have brought to the trial court's attention and had it addressed at the time.
>
> For all those reasons, we cannot conclude that a "genuine issue" exists as to appellant being deprived of the effective assistance from his appellate counsel and

we hereby overrule appellant's App. R. 26(B) application.

(Doc. 11, Ex. 25).

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law. The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent (*see* Doc. 11, Ex. 25 at PageID 234), and reasonably concluded that petitioner's claims were without merit.

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). A "guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently and voluntarily entered. *Id.; see also Campbell,* 769 F.2d at 315.

In the instant case, petitioner's claims in Grounds Two and Three relate to purported deprivations of constitutional rights or other errors occurring before petitioner entered his guilty plea. As noted above, petitioner claims that trial and appellate counsel were ineffective for failing to raise claims regarding his indictment, the sufficiency of evidence, prosecutorial misconduct, and his speedy trial rights. However, in light of petitioner's subsequent guilty plea,

19

the Ohio appeals court reasonably determined that petitioner's pre-plea claims were without merit and that appellate counsel was not ineffective for failing to raise the meritless claims. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis v. Smith,* 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted); *Alder v. Burt,* 240 F. Supp. 2d 651, 670 (E.D. Mich. 2003) ("Failing to present meritless objections at trial or meritless claims on appeal is not ineffective assistance of counsel.") (citing *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999)).[7]

The Ohio Court of Appeals also reasonably determined that petitioner was not deprived of the effective assistance of appellate counsel based on his claims regarding the voluntariness of his guilty plea. The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1968); *see also Brady v. U.S.,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,*

---

[7] *See also, e.g., Kotsonis v. United States,* No. 17-5099, 2017 WL 7310633, at *3 (6th Cir. Sept. 12, 2017) (finding a prosecutorial misconduct claim to be waived by virtue of a knowing and voluntary guilty plea); *United States v. Martin,* 526 F.3d 926, 933 (6th Cir. 2008) (finding that the defendant "waived his right to appeal the sufficiency of evidence supporting his conviction by entering a guilty plea that did not reserve the issue for appeal"); *United States v. Stiger,* 20 F. App'x 307, 309 (6th Cir. 2001) (finding that ineffective assistance of counsel claims relating to pre-plea constitutional deprivations were waived by a subsequent guilty plea) (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("pre-plea ineffective assistance of counsel claims are waived")).

312 U.S. 329, 334 (1941)). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady,* 397 U.S. at 749; *King,* 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir. 1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993). As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (internal citations omitted).

In this case, petitioner has failed to demonstrate that the Ohio Court of Appeals unreasonably determined that his appellate counsel was not ineffective for his failure to argue that trial counsel coerced him into pleading guilty or that his guilty plea was otherwise involuntary. A review of the record confirms that petitioner's guilty plea was voluntary, intelligent, and was entered after being fully informed of his constitutional rights. During petitioner's change of plea hearing, petitioner responded affirmatively to the court's inquiries concerning whether he was advised by his attorney and the Court of the charges against him, the penalty provided by law, and his rights under the Constitution. (Doc. 11-2, Change of Plea Trans. at PageID 265–67). Petitioner affirmed that he understood he was giving up his right to a trial by jury, to confront witnesses against him, to require that the prosecution prove his guilt beyond a reasonable doubt, and that he could not be compelled to testify against himself. (*Id.* at 265–67). Although petitioner now claims his trial counsel was ineffective for persuading him to plead guilty, that she had a conflict of interest, and that she misinformed him regarding the repeat violent offender specification, at the plea hearing petitioner stated that he was satisfied with his attorney's efforts and that no promises or inducements were made in order for him to change his guilty plea:

THE COURT: Are you satisfied with the efforts of your lawyer?

DEFENDANT: Yes, sir.

THE COURT: Other than what's been stated on the record here today, has anybody made additional promises, threats, or inducements in order to get you to change your plea to guilty?

DEFENDANT: No, sir.

(*Id.* at PageID 269–71). Additionally, the trial court judge reviewed the charges to which petitioner was pleading guilty, as well as the maximum sentences associated with both the count of burglary and the repeat violent offender specification. (*Id.* at PageID 261, 265, 267). Finally, the prosecution recited the facts underlying the burglary charge as well as the basis for the repeat violent offender specification, to which petitioner did not object. (*Id.* at PageID 273–77).

The Court finds that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision finding his ineffective assistance of appellate counsel claim to be without merit was an unreasonable application of the *Strickland* standard. The appeals court reasonably found that petitioner entered his plea voluntarily and intelligently, without any coercion of counsel. The record simply does not permit the Court to conclude that petitioner's plea was anything other than a "voluntary and intelligent choice among the alternative courses of action open to him." *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).

Therefore, appellate counsel was not ineffective for failing to raise the meritless claim.[8]

*See Davie*, 547 F.3d at 312.

Accordingly, in sum, the undersigned finds that petitioner is not entitled to relief based on the ineffective assistance of appellate counsel claims raised Grounds Two and Three of the petition. Having found that Grounds One and Four of the petition are either not cognizable or procedurally defaulted and waived, the petition should be denied.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000)

---

[8] The undersigned further notes that to the extent that petitioner relies on evidence outside of the record in support of his underlying ineffective assistance of claims—such as his claim that trial counsel was ineffective for coercing him to plead guilty—appellate counsel was not able to raise such a claim on direct appeal. Appellate counsel therefore, cannot be ineffective for failing to raise such claims on direct appeal. *See McGuire v. Warden*, 738 F.3d 741, 75152 (6th Cir. 2013) ("Ohio courts recognize that claims requiring evidence outside the record may only be meaningfully litigated in post-conviction proceedings"); *Scott v. Tibbels*, No. 3:12-cv-146, 2013 WL 3579925 at *11 (S.D. Ohio July 11, 2013) (Report and Recommendation) ("Ohio law is very clear that new evidence pertaining to trial court error cannot be introduced on direct appeal, so that if a defendant wishes to raise an issue of trial court error which depends on evidence outside the appellate record, he must move for post-conviction relief under Ohio Revised Code § 2953.21."), *adopted*, 2014 WL 5384284 (S.D. Ohio Oct. 21, 2014).

Furthermore, as to petitioner's claim that trial counsel told him "if he plead guilty to the [burglary] charge and allowed her to withdraw his objection to the [repeat violent offender specification (R.V.O.S.)], that the trial court would only sentence him for the Burglary charge itself and that he would not receive any time for the R.V.O.S.," "[a] plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975) (citing *Holland v. United States*, 406 F.2d 213, 216 (5th Cir. 1969)). *See also United States v. Curtis*, No. 99-3818, 2000 WL 145189, at *1 (6th Cir. Jan. 31, 2000) ("It is well-settled that subjective expectations by counsel and the defendant regarding the possible length of sentence, if not realized, do not render involuntary an otherwise valid plea.").

(citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A certificate of appealability should also not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack,* 529 U.S. at 484–85, "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/21/18

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CURTIS A. JORDAN,
    Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:17-cv-054

Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).